NO. 07-02-0191-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 31, 2002

_____

IN THE INTEREST OF M.G. AND E.G., CHILDREN
_____

FROM THE 242ND DISTRICT COURT OF SWISHER COUNTY;

NO. B-10079-00-10; HONORABLE ED SELF, JUDGE

_____

Before QUINN and JOHNSON, JJ., and BOYD[1]

Appellant Carmen Guerra appeals from a judgment terminating the parental rights between Carmen and her children M.G. and E.G. By one issue she urges that the evidence is factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of the children. We affirm.

BACKGROUND

Appellant Carmen Guerra was married to Rosendo Romero, Sr., when she was 16 years old. She had not completed high school when she married, and never did. She had

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

three children by Romero. The marriage was troubled and she separated from him in May, 1999. They were divorced in December, 1999.

After the divorce from Romero, Carmen's lifestyle, which had been poor to begin with, deteriorated. Carmen did not take care of the homes where she and her children lived. The homes were dirty, unkept, and infested with roaches and rats. The children were dirty. There was, on occasion, only spoiled food and milk in the house. She entered into serial relationships with men, among them Jesse Mancha, the alleged father of M.G., and Robert Garza, Jr., the alleged father of E.G. Carmen exhibited symptoms of depression and psychological inability to cope with life situations and decisions.

The three Romero children were removed from Carmen's custody by the Texas Department of Protective and Regulatory Services (TDPRS) in May, 2000, because of findings that the children had been sexually abused by Carmen's brother, Juan. Carmen, on occasion, continued to live in the same house where her mother and brother, Juan, lived.

M.G. was born in March, 2000. Five months after M.G. was born Carmen suffered a miscarriage. TDPRS removed M.G. from Carmen in October, 2000, when he was six months old. When E.G. was born on September 29, 2001, she was immediately removed from Carmen's possession and placed in a foster home.

TDPRS eventually sought termination of Carmen's parental rights as to M.G. and E.G. On March 11 and 12, 2002, the case was tried to the court sitting without a jury.

Carmen's parental rights were terminated. Findings of Fact and Conclusions of Law were entered. Such findings of fact include the following:

> 4. The Court finds by clear and convincing evidence that it is in the best interest of the children the subject of this suit for termination of the parent/child relationship of Respondents CARMEN GUERRA, ROBERT GARZA, JR., AND JESSE MANCHA.

Via one issue, Carmen challenges factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of the children.

## STANDARD OF REVIEW

In reviewing a factual sufficiency of the evidence challenge to findings that termination of parental rights is in the best interest of the children, an appellate court reviews the evidence to determine if it is such that a reasonable fact finder could have formed a firm belief or conviction that the challenged grounds existed. See In re C.H., U.S. Tex. Sup. Ct. J. 1000, 2001 WL 1903109, *1, 5-6 (July 3, 2002); In re G.M., 596 S.W.2d 846, 847 (Tex.1980); State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).[2]

Many factors may be pertinent when deciding what is in the best interest of children in a parental-rights termination case. See In re C.H., 2001 WL 1903109 at *9. Among factors the trier of fact should consider, if applicable are (1) the desires of the child; (2) the

---

[2]The standard does not require appellate deference to termination findings to the extent that the findings will be upheld on appeal so long as the findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. See In re C.H., 2001 WL 1903109 at *8.

3

emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). But, any list of factors to be considered is not exhaustive, nor must all factors from any such list be proved as a condition precedent to termination of parental rights. See In re C.H., 2001 WL 1903109 at *9.

## ANALYSIS

The record before us is replete with strong evidence that Carmen either was unwilling or unable to keep her residence, and that of the children when they lived with her, in a semblence of cleanliness. Witnesses graphically depicted Carmen's houses (she moved frequently) as consistently littered with food, dirty diapers, refuse, stacks of papers, clothing and dirty dishes. Conditions such as an uncovered heater on the floor where it could be reached by a child were described. The houses contained infestations of vermin such as mice, roaches and wasps.

The evidence would support a conclusion that Carmen's care of her children was similar to her care for the houses. Testimony was presented that M.G. was developmentally delayed at the time he was removed from Carmen's possession. On one

4

occasion Carmen was observed feeding M.G. from a bottle containing soured milk. When M.G. was taken to the foster home which had been arranged for him, he had not been bathed in some time and had a "stench" about him. After he was removed from Carmen's care and placed in the foster home his development progressed significantly.

Carmen was provided opportunities to improve her education, psychological condition, parenting skills, and personal habits during the relevant time periods. In her brief she points to evidence of her progress in those areas during the time TDPRS and other agencies were working with her before the termination trial.

Without detailing the evidence referred to by Carmen, we note that such evidence might warrant a factfinder's determining that termination of her parent-child relationship with M.G. and E.G. would not be in the best interest of the children. On the other hand, the evidence, only part of which is set out above, could support the formation of a firm belief or conviction by a reasonable factfinder that termination was in the best interest of the children based upon the emotional and physical danger to the children in the future if Carmen's rights were not terminated, the parental abilities of Carmen, the stability of the home of the foster parents who wanted to adopt M.G. and E.G., and the acts and omissions of Carmen in the past as to her lifestyle and care of her children. See id.

Accordingly, the evidence is factually sufficient to support the trial court's finding. We must, and do, overrule the issue.

CONCLUSION

Having overruled Carmen's sole issue, we affirm the judgment.

Phil Johnson
Justice

Do not publish.